RAMÓN MONTANER, MANAGER, ETC., Appellant, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; SANTOS JIMÉNEZ GAUTIER, Claimant.

No. 201.  Argued June 17, 1940.—Decided July 18, 1940.

*George A. Malcolm, Attorney General, E. de Aldrey, Assistant Attorney General,* and *Víctor J. Vidal González* and *G. Atiles Moréu, Legal Advisers of the State Insurance Fund* for appellant.  *M. León Parra* for respondent commission.  *Virgilio Brunet* and *Miguel A. Casiano* for claimant.

MR. JUSTICE WOLF delivered the opinion of the court.

Isidoro Jiménez, a stevedore, died on March 25, 1939, while working on board the "Millinocket". The Manager of the State Fund denied compensation, on the ground that his death had occurred from natural causes. The heirs appealed to the Industrial Commission and that body held public hearings on August 10th and October 4th.

The petitioners alleged that the workman had died from an accident in the course of employment. The State Fund alleged that the death proceeded from natural causes and that the workman and his heirs furthermore should be denied compensation because he was working illegally, inasmuch as he was under treatment for a previous accident and had not yet been discharged.

The commission rendered an order on February 20, 1940, and found the following facts:

On the morning of the day in question, the deceased workman was working with others in hold No. 4, of the ship "Millinocket", of the Bull Insular Line. They were stow-

ing sugar in sacks weighing 250 pounds each. These sacks were lowered into the hold in slings that contain five sacks each. The propeller shaft occupies the center of the hold. When the sling is lowered it comes to rest against the side of the propeller shaft a few feet from the floor. The sling is pulled away from the shaft and lowered to the place where it is wanted. From there the sacks are thrown into a pile (estiba). This is done by two workmen who grasp the sack by the ends and throw it out with a quick movement.

The board copies in its order part of the testimony of Pascual Román, an eyewitness. According to him, the deceased workman and another pulled the sling about 12 feet away from the propeller shaft; they picked up the first sack and Jiménez fell back. He died almost immediately. They had been working about an hour before this happened.

The workman suffered from syphilitic aortitis, stenosis of the coronary ostia, cardiac hypertrophy, generalized arteriosclerosis and chronic lesions in the aorta and coronary arteries. The board does not make a finding as to what caused death (from the pathologic point of view) but refers to the autopsy and to the report made by the School of Tropical Medicine.

According to Dr. Martínez Alvarez, who performed the autopsy, the death was due to "acute cardiac decompensation of ventricular origin, having caused a collapse by aortic insufficiency (stenosis) subsequent to cardiac hypertrophy and dilatation of the aortic arch."

The report of Dr. Koppish, of the Department of Pathology of the School of Tropical Medicine, to whom the visceræ were sent for examination, states:

"This is a case of very extensive advanced and active syphilitic aortitis, with sudden death from stenosis of the coronary ostia."

The board then copies part of the testimony of doctors Vadi, Janer and Piñero. The first two, experts on behalf of the petitioners, testified that the death was directly caused

by the strain.   Dr. Piñero said that the strain might have caused the death but that it was just a coincidence; that the man was bound to die at any time; that he might have died in his sleep.   Dr. Janer agreed to this last statement.

The finding was:

"It is undeniable that Isidoro Jiménez had aged lesions in his heart, all of serious character, but it also can not be denied that he died while making a fast movement to throw into a pile a sack weighing 250 pounds and which he held by two corners, while his fellow worker Pascual Román held it by the other two.   (Order Industrial Commission, Feb. 20, 1940, p. 8.)

The commission then quotes a number of cases of American courts which have held that compensation should be granted when death is caused by an extraordinary effort even if the workman suffered from chronic disease.   Some jurisprudence is also copied which has no application, relative to cases where compensation has been granted to workmen who have acquired cardiac affections from heavy lifting strains.

The commission's final word was:

"In consequence of the previous statements, we hold that the workman Isidoro Jiménez, case No. C. I. 7358, died in the course of employment and as a result of the same..."

No final finding was made as to whether the workman had been working lawfully or not at the time of his death. On March 1st a motion for reconsideration was filed by the State Fund.   It was denied without opinion on April 25, 1940.

A second motion filed on April 29th again pointed out that an important issue remained without answer.

On May 10, 1940, a new order was issued, denying the second motion and affirming the first order of February 20th, but it decided the question raised by the State Fund.

The order said:

"The death of this workman occurred on March 25, 1939, and his beneficiaries presented in evidence a document signed by Dr. Rolenson, which was marked Exhibit 1 of the petitioner, wherein it was stated that he had suffered an accident in his work on March 6, 1939, which consisted of laceration and contusion of the fourth and fifth fingers of the left hand, and that he was released on the 23rd of the same month and year to resume his work on March 24th. Dr. Rolenson, signer of the document, stated verbally that because the workman complained that he was not completely cured from his lesion, and finding it true, he granted the workman three more days of treatment, that is, until the 27th of the same month and year. The workman, as we have said, died on the 25th when he worked stowing sacks- of sugar in the hold of a ship."

The commission did not specifically hold that the workman was working while under treatment, but this is the implication. The order goes on to say:

"And now we have to decide whether according to the law in force the fact that he was working when he had not been discharged from a previous lesion, and suffered a second accident, he lost all right to compensation for the latter, as the State Fund maintains.

"  *        *        *        *        *        *        *        *

"Nothing, then, is provided by law on the point raised by the Manager of the State Fund. There is no prohibition to a workman convalescing from an accident of work, if before being definitely discharged he feels like working and does so. We seem to deduct from reading the second part of Section 3, that the only right available to the Manager in case a workman acted that way, is to deprive him of the amount that was to be paid him in compensation of the wages he would have received in case he did not suffer the first accident, because the right to receive this amount from the State Fund is in compensation, as the Act says, of the wages he would have received but for the accident. And it is obvious that if he, during that time within which he had the right to collect that compensation from the State Fund, should work and earn a salary from his employer, the Manager of the State Fund was not bound to pay said compensation. But in no part of the act, we repeat, do we find that such action can be fatal to the workman to the point of depriving him of the compensation to which he would be entitled for

the new accident suffered, if by the nature of the previous decision, as happened in the present case, he is in condition to work.''

We agree with the commission.

In deciding the first question raised by the State Fund, it should be said that the commission need not have gone to other jurisdictions in search of jurisprudence.

The case of *Paris* v. *Industrial Commission* (52 P.R.R. 427) is very similar to the one at bar. In that case, too, the deceased was an ordinary workman of the Bull Insular Line. In this case Jiménez and another pulled a sling weighing 1,250 pounds away from the propeller shaft in the hold. In that one París and others were to move a heavy box weighing about 1,200 pounds. Each fell back and died shortly after. In that case, as in this one, the certificate from the School of Tropical Medicine shows that the death was due to stenosis of the aorta. This court said:

''Of course, it may be conceded that the laborer might not have died on the same day if he had not been put to the work of helping to turn over the box. Our answer to this is that the field of cases where a man would die under these circumstances is relatively small. The appellants, as we have seen, do not enter into all these considerations, but given the words of the Act we do not feel that we can say that the death of París Parrilla was the result of an accident 'caused by any act or function inherent in' his 'work or employment.' ''

However, that decision has been apparently overruled if not distinguishable by implication in subsequent cases.

In the case of the death of Benito Santiago, this court said:

''The commission found that Santiago's death was caused by his performance of an act in the course of his employment. There was evidence tending to support this finding. There was evidence tending to show that the act in question usually required the combined · strength of two or three men. Santiago attempted to perform it alone. While so engaged, he had a cerebral hemorrhage. Death ensued. There was evidence tending to show that an experienced workman could do without over-exertion what Santiago attempted

to do and that Santiago was an experienced workman. There was no specific finding on this point. It is a fair inference from all the evidence, however, that Santiago's death was caused by an act which, given his physical condition at the time, amounted in his case to over-exertion. It follows, we think, that his death was due to an accident within the meaning of section 2 of the Workmen's Accident Compensation Act. This is not the case of a workman who, while at work, is overtaken by death from natural causes or from any cause other than an unexpected fortuitous event the result of some act or function inherent in the work or employment." (*Montaner* v. *Industrial Commission*, 54 P.R.R. 113.)

Some time later this court decided the case of the workman Miguel Parque. He, too, was a stevedore, stowing coal in the hold of a ship. He died from heatstroke. This court held:

"...and as it is clear that when the worker met his death he had no reason to expect the mishap which followed, because it was the type of work he had been doing for years without accidents, we must conclude that the Industrial Commission did not err when it decided that Miguel Parque suffered an accident caused by an act or function inherent in his work, and which occurred in the course of his employment and caused his death." (*Montaner* v. *Industrial Commission*, 54 P.R.R. 686.)

The opinion in the case of Rafael Díaz Ortiz contains no detailed statement of facts, but it says: ". . . Rafael Díaz Ortiz died suddenly in the warehouse of Martínez Hnos. & Co. immediately after making a strong endeavor to unload and stow a certain number of barrels which weighed over 300 pounds each." (54 P.R.R. 757.) The court decided:

"The fact that the workman in this case suffered from a chronic ailment—a fact which was not proven conclusively—whereby he would be more susceptible to suffer an injury which would cause his death, would not of itself be sufficient to deprive his beneficiaries of their compensation." (Citations.) (*Montaner* v. *Industrial Commission*, 54 P.R.R. 757, 763.)

One case where the facts are different but which shows that the tendency of this court is towards a liberal construc-

tion of the statute, is that of Juan Matos. This workman suffered an epileptic fit while working in a ditch in a cane field. He fell into the ditch and was drowned. It was charged by the State Fund that the death had been caused by his condition. This court said:

"The spirit of the Workmen's Compensation Act (Act No. 45 of April 18, 1935) is to make compensable the injuries or deaths of workmen as a result of accidents arising from an act or function inherent to their work or employment and which occur in the course thereof. The exceptions to that rule, enumerated in Section 4 of the aforesaid law, are (a) when the workman willfully causes himself the injury; (b) when the workman is intoxicated and such intoxication is the cause of the accident; (c) when the injury is caused by the criminal act of a third person; and (d) when the recklessness of the workman is the sole cause of the injury. The specification of the cases where by exception, compensation can not be recovered for an accident suffered in the course of employment and as a consequence thereof, excludes all the other causes that may be alleged as a bar to compensation. *Inclusio unius est exclusio alterius. Bonilla* v. *Mitchell,* 51 P.R.R. 123. If the fall of the workman Juan Matos had been caused by his own negligence, it is sure that the State Insurance Fund could not have raised the defence of contributory negligence in opposition to the claim. We see no reason that binds us to establish a difference between contributory negligence and the workman's idiopathic condition, as determining causes of an accident, when neither one nor the other are included among the circumstances, which according to Section 4 of the Act (*supra*) prevent the grant of compensation." (55 P.R.R. 867.)

This case was followed in *Montaner* v. *Industrial Commission and Maldonado,* case No. 179, and *Montaner* v. *Industrial Commission and Rodríguez,* case No. 176, both decided January 16, 1940, and reported in 55 *D.P.R.* 985.

Therefore the orders of the commission should be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.